HARRELL, administrator, *v.* NATIONAL BANK OF COMMERCE.

1. "Fraud in the procurement of the note," as used in the Civil Code, §3696, which declares, that the holder of a note is presumed to be such bona fide and for value, but such presumption is negatived by proof of any fraud in the procurement of the note," means the fraud of the holder thereof, and has no reference to fraud in the contract out of which the note arose, or fraud of an intervening indorser.
2. "Where a negotiable instrument is transferred before its maturity, in payment of a pre-existing debt, the transferee is a holder for value, and takes the paper free from the equities existing between the original parties."

Submitted May 23,—Decided June 14, 1907.

Complaint. Before E. T. Hickey, judge pro hac vice. Webster superior court. January 8, 1906.

This was a suit by the National Bank of Commerce against D. B. Harrell, to recover an amount alleged to be due on a promissory note executed by Harrell and payable to the order of the Americus Investment Company, at the Bank of Americus, for $2,500. Pending the suit Harrell died, and his administrator was made a party defendant in his stead. The note was indorsed "Americus Investment Co., per H. C. Bagley, Pt. Pay National Bank of Commerce in New York, or order. Bank of Americus, M. B. Campbell, Cashier." The defendant pleaded that the note sued on was signed by him at the instance and request of S. H. Hawkins, then president of the Savannah, Americus & Montgomery Railway Company, as an accommodation paper, for the distinct purpose of enabling the railway company to raise money with which to pay off its employees. The note was delivered to Hawkins and was indorsed by the Americus Investment Company. Before Hawkins had an opportunity to discount the note and raise the money for the purpose for which the note was made, and while it was on his

desk and in his possession as president of the railroad company, and without his knowledge or consent, M. B. Campbell, then cashier of the Bank of Americus, surreptitiously and fraudulently took possession of the note and indorsed it in the name of the Bank of Americus to the National Bank of Commerce in New York, for an existing indebtedness. The National Bank of Commerce in this way became the holder of the note, and is not a bona fide holder for value before maturity, and the defendant is entitled to urge his defense that the note is without consideration.

On the trial the plaintiff proved that it discounted the note for a valuable consideration, in the usual course of business, before maturity, and without notice of dishonor or want of consideration. The defendant offered to prove by S. H. Hawkins that he told the cashier or vice-president of the Bank of Americus, one or both, that he had this note, and that it was to be used strictly for the purpose for which it was intended. The defendant also offered to prove that Campbell, cashier of the Bank of Americus, fraudulently and without the consent of Hawkins took the note from the desk of Hawkins, and carried it into the Bank of Americus, and discounted it with the plaintiff. The court repelled this testimony, and directed a verdict in favor of the plaintiff for the full amount due on the note. The defendant moved for a new trial, complaining specially of the exclusion of this evidence and the direction of a verdict; the motion was overruled, and he excepted.

*B. F. Harrell* and *G. Y. Harrell,* for plaintiff in error.

*E. A. Hawkins* and *W. A. Dodson,* contra.

EVANS, J. (After stating the facts.)

The note declared upon was a negotiable instrument, and before the defendant would be let into his defense of want of consideration it was necessary for him to show that the plaintiff was not a bona fide holder for value before maturity. Our code declares that "the holder of a note is presumed to be such bona fide, and for value; if either fact is negatived by proof, the defendants are let into all their defenses; such presumption is negatived by proof of any fraud in the procurement of the note." Civil Code, §3696. It was held in *Robenson* v. *Vason,* 37 *Ga.* 66, that fraud in the procurement of a note means fraud in its procurement by the holder thereof, and has no reference to fraud

in the contract out of which the note arises. This construction of this code section has been steadfastly adhered to in many later cases. *Pate* v. *Allison,* 114 *Ga.* 651, and cases cited; *Johnson County Savings Bank* v. *Roberts,* 125 *Ga.* 41. Mr. Justice Lumpkin, in *Grooms* v. *Olliff,* 93 *Ga.* 790, in discussing this section of the code, gave certain instances illustrating that the phrase "fraud in the procurement of the note" meant fraud in the procurement by the holder thereof, and not fraud in the procurement of the note as between the original parties, of which the holder for value had no notice. He said: "If, for instance, one should make and execute a promissory note, intending not to deliver it except in a certain contingency, and another should fraudulently get possession of the note before the contingency arose, this would be a case of fraud in the procurement of the note. . . So, also, a thief who stole a promissory note, or a robber who took it by force from the possession of another, would be guilty of fraud in the procurement." Counsel for plaintiff in error misapply these illustrations when they contend that if an intermediate indorser, by theft or fraud, gets possession of a note and transfers it before due, and for a valuable consideration, to a bona fide purchaser, such purchaser would not be a bona fide holder. The context clearly shows that the learned Justice meant that if the holder fraudulently got possession of the note he would not be a bona fide holder.

Mr. Daniel, in his admirable work on Negotiable Instruments, Volume 1, chapter XXVI, says, in substance, that if a bill or promissory note has been fully completed in form, and signed by the maker, and before delivery is stolen from the possession of the party who has signed it, and passed by the thief to a bona fide holder for value in the usual course of business, the purchaser would be a bona fide holder and entitled to recover against the maker. In addition to numerous decided ·cases sustaining the text, the learned author demonstrates its soundness by convincing reasoning. The maker's signature, says he, "is itself an assurance that his obligation has been perfected by delivery; and it being necessary that the loss should fall upon one of two innocent parties, it should fall upon the one whose act had opened the door for it to enter." A fortiori, if the note has passed out of the possession of the maker into the hands of the payee, and been indorsed by the payee, and surreptitiously abstracted from the

payee's possession, or the possession of some one holding it for the benefit of the payee, and has been by such person transferred for value, before due, without notice of dishonor, and in the usual course of business, the holder would be protected against any de-- fense which the maker might have against the original payee. The only effect of the excluded testimony could have been to prove that an intermediate indorser had fraudulently obtained the note. This alone would not serve to impeach the bona fides of the holder to whom it was transferred by the person fraudulently obtaining possession of the note. The plaintiff bank offered evidence to show that the defendant had purchased the note in good faith, in the usual course of business, for a valuable consideration, before due, without notice of any dishonor. It could have relied upon the presumption afforded by the code section above quoted, and re- . quired of the defendant proof that it was not a bona fide holder, in order to defeat its right to recover. *Johnson County Bank* v. *Roberts,* supra.

The defendant, however, further contends that there was evi-- dence that the National Bank of Commerce took the note from the Bank of Americus in payment of a pre-existing debt, and for that reason he should be let into his defense against the note. This contention is not sound. A note in the hands of a holder for a valuable consideration, transferred before due and without notice of any equities between the maker and the payee, either as pay-ment or as collateral security for an existing debt, is not liable to the equities between the maker and the payee. *Gibson* v. *Con--ner,* 3 *Ga.* 47; *Kaiser* v. *U. S. National Bank,* 99 *Ga.* 258; *Lee* v. *Johnson,* 110 *Ga.* 286. From what has been said, it will be seen that the court properly excluded the evidence about which com-- plaint is made; and as there was no evidence to show that the plaintiff was not a bona fide holder for value before due, the di-- rection of a verdict in its favor was the only legal and logical re-- sult of the trial. *Judgment affirmed. All the Justices concur.*