18781, 18782. TRADERS SECURITIES CO. *v.* CANTON DRUG CO.; and *vice versa*.

166

*J. Glenn Giles, Morris, Hawkins & Wallace,* for plaintiff.

*Aldine & Hewett W. Chambers, A. J. Henderson,* for defendant.

Luke, J.  Traders Securities Company sued Canton Drug Company on three "trade acceptances," payable February 25, 1925, April 25, 1925, and July 25, 1925, respectively, and "exactly similar" except as to their dates of maturity.  The copy of the first acceptance set out in the petition follows:

"Trade Acceptance."

"$59.60.              St. Louis, Mo., July 25, 1924.   No. 12809.

"Seven months after date, pay to the order of ourselves, at our office at St. Louis, Mo., fifty-nine and 60/100 dollars.  The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.

                                        [Signed] Blackstad, Inc.

"To Canton Drug Company, Canton, Ga.

                                        Due Feb. 25, 1925."

The following words are written across the face of the paper: "Accepted.  Canton Drug Co., W. W. F. ;" and on the back of the acceptance appears the following:  "Pay to the order of Traders Securities Co. Blackstad, Inc., per W. A. Blackstad, President."

Paragraph 7 of the petition follows:  "Plaintiff shows further that each of said acceptances herein referred to were, before the maturity thereof, for value, transferred and assigned by the payee therein to the plaintiff herein, and that the plaintiff is now the holder and owner thereof."

The defendant denied indebtedness, denied the allegations of paragraph 7 of the petition, and pleaded that on July 25, 1924, it made five trade acceptances aggregating $298, given Blackstad, Inc., for a lot of jewelry, represented in a schedule to be merchantable at certain prices listed therein; that when the jewelry was shipped, the defendant learned that it was "worthless, made of all sorts of inferior metals, tarnished, turned black, and was not suited

for the purposes intended;" that the few sales made of it injured defendant's business; that upon learning that the jewelry was worthless the defendant returned it to the seller; that "before the discovery of the fraud" the defendant sold $42.20 worth of the jewelry, but returned the remainder; that the defendant had already paid said company $119.20; that "the entire plan of said company for the advertising and sale of the jewelry . . was a scheme to cheat and swindle" the defendant; that if the plaintiff has said acceptances as alleged, "the same were received by it for the purpose of aiding and abetting the perpetration of the fraud upon the defendant;" that the same, if transferred as alleged, were so transferred in order that the defendant should be shut off from its defense of failure of consideration; and that if the plaintiff has such acceptances, it took them with full knowledge and notice of the worthlessness of the goods for which they were given.

The jury found for the defendant, and Traders Securities Company assigns error upon the overruling of its motion for a new trial, based upon the general grounds. Canton Drug Company, by cross-bill of exceptions, alleges that the court erred in admitting the said acceptances in evidence.

We shall first consider the cross-bill. The ruling of the trial judge as therein complained of can not be considered by this court, for the reason that the assignment of error, complaining of the admission of documentary evidence, does not set out the evidence, either in form or in substance.

At this stage of our discussion, then, Traders Securities Company is presumed to be the holder of the said acceptances bona fide and for value; but Canton Drug Company, as it has the right to do, pleads, and undertakes to prove, fraud in the procurement of the acceptances (Civil Code of 1910, § 4288), in order to let in its defense of failure of consideration. Civil Code (1910), § 4290. Of course, if the plaintiff acquired title to the acceptances or to any one of them after maturity, it took subject to all the equities existing between the original parties, and was not a bona fide purchaser (Civil Code, § 4287); and the plea and answer presents this defense. See also *Parker* v. *Daniel,* 16 *Ga. App.* 23 (84 S. E. 483).

Frank Coffman, who was secretary and treasurer of Traders Securities Company and at times acted as its attorney, testified that his company was in the business of buying and selling commercial

paper of all kinds; that it did not finance Blackstad, Inc., and that its only connection with the latter was that at times it bought its papers outright and for value at a discount; that on September 8, 1924, his company, acting through him, bought from Blackstad, Inc., five trade acceptances, due respectively three, five, seven, nine, and twelve months after date; that the first two of said acceptances were paid through American Trust Company, to whom they were given for collection, but that the last three were not paid; that each acceptance was for the principal sum of $59.60; that neither Traders Securities Company nor the witness had any knowledge whatsoever of any infirmity or defect in the acceptances, or of any defense to them, either prior to or at the time of the purchase; that the papers were purchased for $268.20, and that the three sued on represented three fifths of that amount; that he had no connection, personal, financial, or official, with Blackstad, Inc., and that the stockholders of one company were not the stockholders of the other; that the Traders Securities Company "did not advise Blackstad, Inc., on March 11, 1925, that the defendant failed and refused to pay the trade acceptances which had become due," and "Blackstad, Inc., did not at that time advise us that the defendant had refused to pay for the balance of the jewelry; there was no conversation of that kind," and "we did not know that Blackstad, Inc., was engaged exclusively in selling jewelry under a plan of installment payment;" and that the acceptances sued on were the only ones his company had received from Blackstad, Inc., that it had not been able to collect from the maker, and that approximately five per cent. of his company's business was with that concern.

It appears from the record that the acceptances sued on were similar, except as to due dates, and as to the fact that the one due February 25, 1925, had "also on the back thereof indorsement of American Trust Company scratched out with pencil, the name 'Traders Securities Co.' being stamped in the blank space in the indorsement in ink of different color from that used in the other words of indorsement."

W. F. Fincher, manager of Canton Drug Company, testified that he had no notice from Traders Securities Company that it had the acceptances, until suit was filed; that he paid two of the acceptances by check sent direct to American Trust Company, these checks being dated respectively October 28, 1924, and December 23, 1924,

payable to American Trust Co., signed "Canton Drug Co., by W. W. F.;" that the two acceptance paid had on them an indorsement in blank of Blackstad, Inc., and the indorsement of the American Trust Company; that before the acceptance maturing in February, 1925, became due, he received a notice from American Trust Company, of St. Louis, that it would soon become due; that he did not receive any notice from any other person or corporation of the acceptances becoming due, or that any other person was holding the acceptances for collection, until after the refusal of Canton Drug Company to pay said acceptance; that not until after the third acceptance became due and Canton Drug Company refused to pay it did Blackstad, Inc., indirectly notify the defendant in error that it had sold the acceptances; that the jewelry for which the acceptances were given was "too high, was not as the salesman represented it to be, and would not sell;" that his concern sold about $30 worth of the jewelry at about half cost; that some of the ear-bobs were torn up, and were not worth anything like their cost of fifty cents each; that Canton Drug Company had on hand about $53 worth of jewelry, according to the valuation of the seller; that this jewelry was kept because Canton Drug Company lacked about $30 or $40 of getting value received for the money paid by it on the first two of the original five acceptances; and that the balance of the jewelry had been returned to the seller, which had it, the witness supposed.

The first of the two acceptances paid was identified by the witness Fincher as having been paid by him with check of Canton Drug Company, dated October 28, 1924. This acceptance, which was introduced in evidence was identical in language with those sued on, except as to due date and had an entry on the face thereof, "Paid 10/31.24. American Trust Co., St. Louis." The following indorsements appeared on the back of the paper: "Pay to the order of————————————Blackstad, Inc., per W. A. Blackstad," and "Pay to the order of any bank or banker. All prior indorsements guaranteed. American Trust Co. 4/2, St. Louis, Mo., C. L. Sager, Treasurer."

The letter of February 12, 1925, written by Canton Drug Company to American Trust Company, follows: "We received your notice of trade acceptance you hold against us. We have to-day returned to Blackstad, Inc., the jewelry for which these trade accept-

ances were given. The jewelry was not salable here, and his prices were not in line; so we have returned it to them, with instructions to send us something worth the money, or we would have to stop payment on same. If they send goods that look like they have something like the value represented, we will continue payment; if not, we will be forced to protect ourselves."

The letter of February.23, 1925, written by Canton Drug Company to Blackstad, Inc., acknowledged receipt of $94.62 worth of jewelry, complained of certain errors in the credit invoice, inquired what "exchange credit" meant, stated that it had paid two acceptances aggregating $119.20, and had returned $265.45 worth of merchandise, and offered to "call it square."

On March 5, 1925, Blackstad, Inc., replying to the foregoing letter, offered to exchange jewelry, but declined to accept any goods as a credit.

On March 11, 1925, Blackstad, Inc., wrote Canton Drug Company the following letter: "We have an inquiry from the Traders Securities Co., of this city, who discounted for us your five trade acceptances for $59.60 each. They advise us that they have been depositing your acceptances as they came due with the American Trust Co., of this city, for collection. The American Trust Co. failed to receive a check for your Feb. 25th acceptance, and forwarded the same to a local bank in your community, where it would be more convenient for payment, but up to date they state that no remittance has been received. The Blackstad, Inc., finds it necessary now and then to discount some of its paper in order to buy advantageously for cash large purchases of merchandise when the opportunity affords, and also to enable us to extend longtime payments to our customers. We desire greatly to have you sustain the high standing that our inquiries justified us in assuming, and hope that you will take care of this past-due paper without further delay."

On March 13, 1925, Canton Drug Company wrote to Blackstad, Inc., that it had paid $119.20; that it had returned the jewelry, and that it was willing to take a loss, and suggested that if this was not satisfactory, further correspondence be had with attorney Henderson, who had the files in charge.

The defendant contends that the fact that the indorsement of American Trust Company had been scratched off the acceptance

due February 25, 1925, and that "Traders Securities Co." was stamped over the blank indorsement thereon in ink differing in color from the remainder of the indorsement (see prior statement of evidence), indicated that something was wrong with the transfer, and that it was made after the maturity of the paper. The defendant contends also that it had not been advised of any transfer of the papers until after it had notified both the bank and Blackstad, Inc., of its dissatisfaction with the jewelry; that the letter of Blackstad, Inc., of March 11, 1925, clearly showed that that concern and Traders Securities Company "had their heads together" about the acceptances and that Blackstad, Inc., had a lively interest in the transferred acceptances,—that for these, and other reasons indicated by the evidence, the plaintiff was not an innocent purchaser for value.

Of course, fraud in the procurement of a note has no reference to fraud in the contract out of which the note arose, but refers only to fraud on the part of the holder in obtaining it. *Harrell* v. *National Bank of Commerce,* 128 *Ga.* 504 (57 S. E. 869); *Hope* v. *Hedgerose Heights Co.,* 19 *Ga. App.* 10 (4) (90 S. E. 731); *Brantley* v. *Merchants and Farmers Bank,* 22 *Ga. App.* 667 (2) (97 S. E. 109). "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." Civil Code (1910), § 4626. "Any circumstance which would place a prudent man upon his guard, in purchasing negotiable paper, shall be sufficient to constitute notice to a purchaser of such paper before it is due." Civil Code, § 4291; *Fidelity Trust Co.* v. *Mays,* 142 *Ga.* 821 (83 S. E. 961). However, the circumstances relied on to overcome the presumption that one is the bona fide holder of a negotiable paper must have some probative force. To this effect see *Edwards & Deutsch Lithographing Co.* v. *Vidalia Grocery Co.,* 144 *Ga.* 514 (87 S. E. 675).

Neither the fact that the indorsement of the collecting bank had been scratched off a negotiable paper to which it appeared likely there was to be a defense, nor the fact that the blank indorsement had been completed by the insertion of the name of the transferee, shows fraud in the procurement of the paper, or indicates that the transfer of the acceptance was made after maturity. Of course, the fact that Canton Drug Company had not been notified of the transfer of the papers is not indicative of fraud in the procurement of

them. *Tuck* v. *National Bank of Athens,* 108 *Ga.* 446 (33 S. E. 983). Nor do we think that the letter of Blackstad, Inc., requesting Canton Drug Company to pay the acceptances was indicative of the fraud alleged. It appears from the evidence that Blackstad, Inc., often discounted its papers to Traders Securities Company, and it is quite natural that Blackstad, Inc., preferred that its discounted papers be paid. Furthermore, Blackstad, Inc., was liable on the acceptances as indorser. We are aware of the fact this question has been decided by a jury, yet our opinion, from a careful study of the record, is that the evidence raises no fair inference of the alleged mala fides of the transaction.

The Traders Securities Company being a bona fide purchaser before maturity of the trade acceptances, it was protected against the defense of failure of consideration, and that phase of the defense needs no discussion.

The court erred in overruling the plaintiff's motion for a new trial.

*Judgment on the main bill of exceptions reversed; on cross-bill affirmed. Broyles, C. J., and Bloodworth, J., concur.*